```
                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF TEXAS
                           FORT WORTH DIVISION

WILLIAM N. OLIVER,               §
(BOP No. 44269-004)              §
VS.                              §   CIVIL ACTION NO.4:09-CV-767-Y
                                 §
                                 §
DOCTOR KANAN, et al.             §
```

OPINION and ORDER OF DISMISSAL UNDER 28 U.S.C. §§ 1915A(b)(1)
         and UNDER 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii)

This case is before the Court for review of pro-se plaintiff and inmate William N. Oliver's claims under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). The live pleadings in this case are Oliver's December 28, 2009, complaint, and his April 8, 2010, more definite statement ("MDS") filed in response to this Court's order. He has named as defendants in this action three individuals associated with FCI–Fort Worth: Dr. Kanan, Dr. Tobera, and Physician's Assistant (PA) Marrero. (Compl. Style; § I(C); MDS at ¶¶ 3-5.) He also names the FCI--Fort Worth medical staff. Oliver complains of the inadequacy of the medical care provided to him, and the actions of the individual defendants in responding to his medical-related issues. (Compl. § I(C); § IV; MDS at ¶¶ 1-8.) He also alleges that he was discriminated against because of the color of his skin. (Compl. § IV.) He seeks compensatory monetary damages as well as an order to transfer him to another institution. (Compl.§ V.)

A complaint filed in forma pauperis that lacks an arguable basis in law should be dismissed under 28 U.S.C. § 1915.[1] Under 28 U.S.C. § 1915(e)(2)(B), a district court retains broad discretion in determining at any time whether an in-forma-pauperis claim should be dismissed.[2] Furthermore, as a part of the Prison Litigation Reform Act ("PLRA"), Congress enacted 28 U.S.C. § 1915A, which requires the Court to review a complaint from a prisoner seeking relief from a governmental entity or governmental officer or employee as soon as possible after docketing.[3] Consistent with § 1915A is prior case law recognizing that a district court is not required to await a responsive pleading to conduct its § 1915 inquiry.[4] Rather, § 1915 gives judges the power to "dismiss a claim based on an indisputably meritless legal theory."[5] After review of the complaint and more definite statement under these standards, the Court concludes that Plaintiff's claims must be dismissed.

As inmate plaintiff Oliver has asserted claims for violation of his constitutional rights against individual government

---

[1] *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). Section 28 U.S.C. § 1915(e) *requires* dismissal not only when an allegation of poverty is untrue or the action is frivolous or malicious, but also when "the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(A) and (B)(West 2006).

[2] *See* 28 U.S.C.A. § 1915(e)(2)(West 2006); *Adepegba v. Hammons,* 103 F.3d 383, 388 (5th Cir. 1996); *see also Wesson v. Oglesby,* 910 F.2d 278, 281 (5th Cir. 1990)(discussing authority to dismiss at any time under prior § 1915(d)).

[3] *See* 28 U.S.C.A. § 1915A(a)(West 2006).

[4] *See Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995).

[5] *Id., citing Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

defendants, the Court has construed his claims as seeking relief under *Bivens* v. *Six Unknown Named Agents of the Federal Bureau of Narcotics ("Bivens")*.[6] In order to assert a claim for damages for violation of federal constitutional rights under *Bivens,* a plaintiff must set forth facts in support of both of its elements: (1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) the deprivation was imposed by a person acting under color of law.[7] Plaintiff has failed to satisfy the first element as to any of his claims.

Oliver claims that he was deprived of his rights under the Eighth Amendment to the Constitution for events arising out of the medical care he received while at FCI--Fort Worth. Deliberate indifference to a prisoner's serious medical needs has been deemed to amount to cruel and unusual punishment under the Eighth Amendment.[8] Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the

---

[6] 403 U.S. 388, 297 (1971). *Bivens,* of course, is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball,* 168 F.3d 856, 863 n. 10(5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials"), *overruled on other grounds, Castellano v. Fragozo,* 352 F.3d 939, 948-49 & n. 36 (5th Cir. 2003), *cert den'd,* 543 U.S. (2004).

[7] *See West v. Atkins,* 487 U.S. 42, 48 (1988)(elements of § 1983 action); *Evans,* 168 F.3d at 863 n. 10.

[8] *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976).

3

defendants."[9] This subjective deliberate-indifference standard is now equated with the standard for criminal recklessness:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.[10]

Consistent with this standard is the recognition that negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil-rights action.[11]

Oliver's allegations do not give rise to a claim of deliberate indifference to his serious medical needs against Kanan, Tobera, and Marrero. He complains of inadequate treatment for ongoing diarrhea and loose stool, blood in his stool, the failure to provide him a pass for a soft shoe, pain in his feet, and pain in his breast. When asked to provide specifics, Oliver recited that "Dr. Kanan knew about my diarrhea problem and how long I had it, he only ordered stool tests." (MDS ¶ 3.) Oliver also noted that doctors Toberra and Kanan knew about his diarrhea problem because they examined him and recommended a "nerve block shot," but when he returned for the scheduled treatment, he was told they couldn't treat him. (MDS ¶ 4.)

---

[9] *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985); *see also Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

[10] *Farmer,* 511 U.S. at 837; *see also Hare v. City of Corinth,* 74 F.3d 633, 648 (5th Cir. 1996)(*en banc*), *opinion after subsequent remand,* 135 F.3d 320, 327 (5th Cir. 1998).

[11] *See Estelle,* 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *see also Varnardo v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)(unsuccessful medical treatment, neglect, nor medical malpractice give rise to a § 1983 cause of action)(citations omitted).

4

He also alleges that Dr. Kanan, in response to his complaint of a mass in his left breast, responded that "men did not hardly have breast cancer." (MDs ¶ 4.) Oliver also complains that he asked Dr. Toberra if he should take a certain prescription, out of concern for any interaction with other medications he was already taking, and that although Toberra approved his taking the medication, he later had a reaction to the medication, including problems with his kidneys that "they fail to properly treat." (MDS ¶ 4.) As to Marrero, Oliver contends that although he timely went to sick call when he was told to report, Marrero told him that he "was old and nothing will ever be the same again, and that he had no wonder drug." (MDS ¶ 5.) Oliver also makes several other allegations about his health problems and the response by "health service," but he does not allege any other facts against any of the three named defendants.

Oliver's allegations amount to nothing more than disagreement between him and defendants on what medical care is appropriate, and/or facts that show that the response received to some of his medical care issues was not reasonable. But negligence or medical neglect does not state a claim under the Eighth Amendment, and disagreement between an inmate and his physicians as to what medical care is appropriate does not state a claim for Eighth Amendment indifference to medical needs.[12] Any deficiency in the determination of the

---

[12]*See Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997)(affirming the dismissal of suit as frivolous where prisoner claimed medical personnel should have tried different methods of diagnosis and treatment); *see also Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995), *citing Varnado,* 920 F.2d at 321; *see also Street V. Corrections Corp. of America,* 102 F.3d 810, 816 n.13 (6th Cir.

treatment of Plaintiff by Kanan, Toberra, and Marrero, does not approach meeting the deliberate-indifference standard.[13] As a result, Oliver's claims against individual defendants Kanan, Toberra and Marrero must be dismissed.

Oliver has also named the "FCI medical staff" in this suit, but when asked by the Court to name any specific additional defendants related to this claim, Oliver failed to provide any names. As the FCI medical staff is not a proper defendant, any such claims by Oliver must be dismissed.

*Fifth Amendment*

Oliver also purports to bring a claim under the Fifth Amendment, assuming it provides a right to proper medical care. (MDS ¶ 1.) As noted above, however, a constitutional claim relating to medical care for a convicted inmate such as Oliver arises under the Eighth Amendment. Instead, it appears to the Court that Oliver's factual allegations attempt to recite a claim under the Fifth Amendment are his claims that he has been discriminated against. (Compl. § IV; MDS at ¶ 9.) Although "the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'"[14] The Supreme

---

1996)(patient's disagreement with his physicians over the proper medical treatment alleges nothing more than a medical malpractice claim, and is not cognizable as a constitutional claim.)

[13]*See generally Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.)(doctor's failure to discover inmate's ulcer, failure to read nurses's notes regarding inmate's incontinence problems, or to ensure that orders were carried out, might constitute negligence, but not deliberate indifference), *cert. den'd,* 528 U.S. 906 (1999).

[14]*Schneider v. Rusk,* 377 U.S. 163, 168 (1964)(quoting *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).

6

Court has recognized that its "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment."[15]

Oliver specifically alleges that "he has seen white people taken to the hospital for the same complaint as I have." (Compl. § IV.) In response to a request for specific facts related to his allegation that he had been discriminated against, Oliver wrote:

> Other inmates in my unit were getting proper health service, however, all of these inmates were "white" . . and they all were took good care of by health services, the medical records will prove allegations, I ask for colon and stomach test (but received none) I had to go to the warden to get toilet paper because two rolls is not enough, two or three time they stop refilling my medication for my eyes, when in ask about "why" they said they must be out of date, this happen on March 25, 2009, however, they were not out of date [sic]." (MDS at ¶ 9.)

An equal-protection violation may occur when the government treats someone differently than another who is similarly situated.[16] The general rule is that government legislation or other government action is presumed valid and will be sustained if the action is rationally related to a legitimate government interest.[17] When legislation or government action classifies by race, alienage or other suspect class, or when government action impinges on personal fundamental rights protected by the Constitution, the law or

---

[15]*Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)(citing *Schlesinger v. Ballard*, 419 U.S. 498 (1975); *Jimenez v. Weinberger*, 417 U.S. 628, 637 (1974); and *Frontiero v. Richardson*, 411 U.S. 677 (1973)).

[16]*City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).

[17]*Id.* at 440 (citations omitted).

7

government action is subject to strict scrutiny and will be sustained only if it is narrowly tailored to serve a compelling government interest.[18] In the context of a claim by a prisoner alleging unequal treatment with regard to other prisoners, a claim based upon a racial classification is subject to the same strict-scrutiny analysis as a racial classification outside of prison.[19] Thus in review of an equal-protection challenge based upon race, prison officials must demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest.[20]

Although Oliver does not identify his race, the Court assumes that, as he complains of being treated differently from "white" prisoners, he is of another race. As the only information available is that recited in Oliver's pleadings, the Court does not have enough information to discern whether any compelling government interest could relate to or justify the alleged circumstances of Oliver's treatment.

Even assuming, however, that Oliver has alleged that he was

---

[18]*Id.* at 440-41.

[19]*see Johnson v. California,* 543 U.S. 499, 515 (2005); *see generally Tolbert v. McGrath,* No. C 04-3039 SI (PR), 2005 WL 3310065, at *6 (N.D. Cal. Dec. 7, 2005)

> For distinctions drawn among prisoners other than those based on race, strict scrutiny is inappropriate to test the infringement of prisoner's constitutional rights. Where a prison regulation (other than a race-based one) impinges on inmates' constitutional rights, the regulation or practice is valid if it is reasonably related to legitimate penological interests. In short, a race discrimination claim is analyzed under a strict scrutiny standard and a religious discrimination claim analyzed under the less restrictive *Turner* standard)(citations omitted).

[20]*Id.*, at 510-15; *see Tolbert,* 2005 WL 3310065, at *6.

8

treated differently from a similarly-situated inmate on the basis of his race, he has not identified a particular defendant or stated how any particular defendant acted with a discriminatory purpose. In order to establish a claim of denial of equal protection of law, a plaintiff must demonstrate that he was intentionally treated differently from "similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."[21] The plaintiff must allege that the "defendant acted with a discriminatory purpose."[22] "Discriminatory purpose in an equal protection context implies that the decision maker selected a particular course of action at least in part because of, and not simply in spite of, its adverse effects."[23] Although the Court asked Oliver to state specific facts about his discrimination claim, including naming "all persons involved," he did not list any particular defendants in his answer. (MDS ¶ 9.) Because Oliver has not alleged any facts that any defendant acted with a discriminatory purpose, any claim for violation of his rights not to be denied equal protection of law must be dismissed.

Oliver also seeks to be transferred to another institution "that will properly treat my medical condition." (Compl. § V.) It is well settled that a prisoner does not have a constitutional right to serve a sentence in any particular institution, or to be

---

[21]*Taylor,* 257 F.3d at 473.

[22]*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1948 (2009).

[23]*Sonnier v. Quarterman,* 476 F.3d 349, 368 (5th Cir. 2007), *cert. den'd*, 552 U.S. 948 (2007)(citing *United States v. Galloway,* 951 F.2d 64, 65 (5th Cir. 1992)).

9

transferred or not transferred from one facility to another.[24] The Bureau of Prisons has "sole discretion" to determine where a federal inmate will be housed.[25] Because the transfer of a federal inmate to another correctional institution does not implicate a constitutional interest, plaintiff Oliver is not entitled to the requested relief, and such claim must be dismissed.

Therefore, all of plaintiff William N. Oliver's claims are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b)(1) and, alternatively, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

SIGNED July 26, 2010.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[24]See *Olim v. Wakinekona*, 461 U.S. 238, 249-50 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *Prins v. Coughlin*, 76 F.3d 504, 507 (2d Cir.1997).

[25]See *United States v. Williams*, 65 F.3d 301, 307 (2d Cir.1995).